## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

| | |
|---|---|
| COURTLAND BULLARD Individually and for Others Similarly Situated, | Case No. _____ |
|                  Plaintiffs, | Jury Trial Demanded |
| v. | FLSA Collective Action |
| ALLIED STAFF AUGMENTATION PARTNERS, INC., | |
|             Defendant. | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Courtland Bullard (Bullard) brings this lawsuit to recover unpaid overtime wages and other damages from Allied Staff Augmentation Partners, Inc. (ASAP) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

2.      Bullard worked for ASAP as an hourly employee.

3.      Bullard and the Putative Class Members (defined below) regularly worked more than 40 hours a week.

4.      But ASAP did not pay them overtime.

5.      Instead of paying overtime as required by the FLSA, ASAP paid Bullard and the other workers like him the same hourly rate for all hours worked, including those in excess of 40 hours in a single week (or, "straight time for overtime").

6.      ASAP never paid Bullard or the Putative Class Members a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION AND VENUE**

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10.     Bullard worked for ASAP in Crystal River, Florida, which is in this District and Division.

**THE PARTIES**

11.     Bullard was an hourly employee of ASAP.

12.     Bullard worked for ASAP as a Construction Coordinator from approximately August 2013 through November 2017.

13.     Throughout his employment, ASAP paid Bullard the same hourly rate for all hours worked, including those worked in excess of 40 hours in a single workweek.

14.     His written consent is attached as Exhibit 1.

15.     Bullard brings this action on behalf of himself and all other similarly situated workers who ASAP paid straight time for overtime.

16.     ASAP paid each of these workers the same hourly rate for all hours worked, including those worked in excess of 40 hours in a single workweek in violation of the FLSA.

17.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All employees of ASAP who were paid "straight time for overtime" at any time during the past three years ("Putative Class Members").**

18.     ASAP can be served with process by serving its registered agent: **Incorp Services, Inc., 17888 67th Court North, Suite 225, Loxahatchee, Florida 33470**.

2

## COVERAGE UNDER THE FLSA

19.     At all relevant times, ASAP was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     At all relevant times, ASAP was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     At all relevant times, ASAP was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because they had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment - that have been moved in or produced for commerce.

22.     At all relevant times, ASAP has had an annual gross volume of sales made or business done of not less than $1,000,000 each.

23.     At all relevant times, Bullard and the Putative Class Members (defined below) were engaged in commerce or in the production of goods for commerce.

## THE FACTS

24.     ASAP bills itself as "the expert solution for companies seeking skilled contract labor without the administrative, legal and management headaches of using outsourced workers."[1]

25.     Bullard was an hourly employee of ASAP.

26.     Bullard performed work under the job title of Construction Coordinator.

27.     Bullard worked for ASAP from March 2013 until November 2017.

28.     Throughout his employment with ASAP, ASAP paid Bullard the same hourly rate for all hours worked, including those in excess of 40 in a single workweek.

---

[1] https://www.asap.us.com/who-we-are/ (last visited May 27, 2020).

29.    Specifically, ASAP paid Bullard $85.00 for every hour he worked, including those in excess of 40 in a week.

30.    ASAP paid Bullard and the Putative Class Members under its straight time for overtime pay scheme.

31.    Bullard and the Putative Class Members did not receive a salary.

32.    If Bullard and the Putative Class Members worked fewer than 40 hours in a week, they were only paid for the hours worked.

33.    Bullard and the Putative Class Members regularly worked over 40 hours in a week.

34.    In fact, Bullard regularly worked 10- to 12-hour daily shifts, for at least 5 days each week.

35.    Indeed, during outages, Bullard and the Putative Class Members routinely worked 80-90+ hours per week.

36.    Bullard's schedule is typical of the Putative Class Members.

37.    Instead of paying overtime, ASAP paid Bullard and the Putative Class Members the same hourly rate for the hours he worked over 40 in a work week.

38.    Bullard and the Putative Class Members worked in accordance with the schedule set by ASAP and/or its clients.

39.    The hours Bullard and the Putative Class Members worked are reflected in ASAP's records.

40.    Rather than receiving time and half as required by the FLSA, Bullard and the Putative Class Members only received "straight time" pay for the hours they worked in excess of 40 in a workweek.

41.     ASAP's "straight time for overtime" payment scheme violates the FLSA because it deprives Bullard and the Putative Class Members of overtime at a rate of 1 ½ their regular rates for the hours they work in excess of 40 hours in a single workweek.

42.     ASAP is aware, or should have been aware, that the FLSA required it to pay Bullard and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

43.     ASAP has been sued multiple times for its straight time for overtime pay scheme.

44.     ASAP knew Bullard and the Putative Class Members worked more than 40 hours a week.

45.     ASAP knew, or showed reckless disregard for whether, the Putative Class Members were entitled to overtime under the FLSA.

46.     Nonetheless, ASAP did not pay Bullard and the Putative Class Members overtime as required by the FLSA.

47.     ASAP knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

48.     The illegal "straight time for overtime" pay practice that ASAP imposed on Bullard was likewise imposed on the Putative Class Members.

49.     Dozens of individuals were victimized by ASAP's pattern, practice, and policy which is in willful violation of the FLSA.

50.     Numerous other individuals who worked with Bullard indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

51.     Based on his experiences and tenure with ASAP, Bullard is aware that ASAP's illegal practices were imposed on the Putative Class Members.

52.     The Putative Class Members were all not afforded overtime compensation when they worked in excess of 40 hours in a week.

53.     ASAP's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

54.     Bullard's experiences are therefore typical of the experiences of the Putative Class Members.

55.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

56.     Bullard has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Bullard has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

57.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

58.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries, and ASAP will reap the unjust benefits of violating the FLSA.

59.     Furthermore, even if some of the Putative Class Members could afford individual litigation against ASAP, it would be unduly burdensome to the judicial system.

60.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

61.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

62.     Among the common questions of law and fact are:

a.      Whether ASAP's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

b.      Whether ASAP's violation of the FLSA was willful; and

c.      Whether ASAP's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

63.     Bullard's claims are typical of the claims of the Putative Class Members.

64.     Bullard and the Putative Class Members sustained damages arising out of ASAP's illegal and uniform employment policy.

65.     Bullard knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

66.     Even if the issue of damages were somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## CAUSE OF ACTION
## FLSA VIOLATIONS

67.     Bullard brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

68.     By failing to pay Bullard and the Putative Class Members overtime at one-and-one-half times their regular rates, ASAP violated the FLSA's overtime provisions.

69.     ASAP failed to guarantee Bullard and the Putative Class Members a salary.

70.     ASAP failed to pay Bullard and the Putative Class Members overtime at the rates required by the FLSA.

71.     Instead, ASAP paid Bullard and the Putative Class Members straight time for overtime.

72.     ASAP owes Bullard and the Putative Class Members the difference between the rate paid to them and the proper overtime rate.

73.     ASAP knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bullard and the Putative Class Members overtime compensation.

74.     ASAP's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

75.     Accordingly, Bullard and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

Bullard demands a trial by jury.

## PRAYER

Bullard prays for relief as follows:

a.  An order allowing this action to proceed as a collective action under the FLSA and directing notice to all hourly employees who received straight time for overtime;

b.  Judgment awarding Bullard and the Putative Class Members all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

c.  An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

d.  All such other and further relief to which Bullard and the Putative Class Members may show themselves to be justly entitled.

Dated this 8th day of June, 2020.

Respectfully submitted,

By:      /s/ *C. Ryan Morgan*
**C. Ryan Morgan, Esq.**
FBN 0015527
Morgan & Morgan, P.A.
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:      (407) 420-1414
Facsimile:      (407) 867-4791
Email: rmorgan@forthepeople.com
**Local Counsel for Plaintiff**

**AND**

**Taylor A. Jones***
TX Bar No. 24108723
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
tjones@mybackwages.com
*Pro Hac Vice Applications Forthcoming*

**ATTORNEYS IN CHARGE FOR PLAINTIFF**